## Case No. 62.
### ADAMS v. MEYERS.
[1 Sawy. 306;[1] 8 N. B. R. 214.]
District Court, D. Oregon. Sept. 5, 1870.

BANKRUPTCY—TORTIOUS ACTS OF ASSIGNEE—CONFUSION OF GOODS.

1. The estate of a bankrupt is not answerable for the tortious acts of the assignee.

2. When the wheat of two parties is intermixed and confused, by mutual consent, they become owners in common of the grain so mixed in proportion to their respective shares of the bulk or quantity.

[Cited in Rahilly v. Wilson, Case No. 11,532; The Pietro G., 38 Fed. Rep. 150.]

3. When the goods of two parties are mixed by one without the consent of the other, if they be grain or other articles, of equal value, the other party is only entitled to his proportionate share of the common quantity.

[Cited in The Pietro G., 38 Fed. Rep. 150.]

[See Rahilly v. Wilson, Case No. 11,531; Norris v. U. S., 44 Fed. Rep. 735; Harrington v. U. S., 11 Wall. (78 U. S.) 356.]

[See note at end of case.]

[In bankruptcy. Action by E. M. Adams against George T. Meyers, as assignee of E. T. Warren. Judgment for defendant.]

John Catlin, for defendant.

DEADY, District Judge. This is a controversy submitted to the court upon an agreed case pursuant to chapter 2, tit. 14, of the Code. Code Or. 202. From the case stated it appears:

I. That on March 10, 1870, said Warren filed his petition in bankruptcy in this court, and that on March 14 he was duly adjudged a bankrupt, and that afterwards the defendant was appointed assignee of said bankrupt. That in September, 1869, the plaintiff delivered to said Warren 221 bushels of merchantable wheat, for which the latter gave his receipt as follows: "McMinnville, Or., Sept. 22, 1869. Commercial Mills. Received of E. M. Adams 13,260 ℔s. wheat, equal to 221 bushels. (Signed) E. T. Warren, Frank." That said Warren received said wheat as a warehouseman and put it in a granery then owned by him and situate near his grist mill aforesaid, and with the knowledge and consent of the plaintiff intermixed and confused

[1][Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

the same with a large quantity of other wheat, not the property of the plaintiff, and that prior to said March 10, said Warren allowed all the wheat to be removed from said granary, but that none of said wheat was ever returned to plaintiff, nor did he ever receive any satisfaction therefor, except for $11\frac{3}{100}$ bushels.

II. That the defendant, as assignee aforesaid, became possessed of several hundred bushels of wheat stored in bulk in another granary near the mill aforesaid, which, on May 3, he sold at public auction, the plaintiff then and there protesting against the sale of so much of said wheat as would be equal in quantity to the number of bushels stored by him with Warren as aforesaid, and that at the time of said sale said wheat was worth sixty cents per bushel in coin. Upon this statement of facts, which is to be deemed a special verdict, (Code Or. 203) the plaintiff claims that the defendant is liable to him in the sum of $126.12 damages for the conversion of the wheat delivered as aforesaid, and not returned or accounted for. On the other hand the defendant denies that he is liable to the plaintiff in any sum. The case was submitted without argument, and I am not therefore specially advised as to the particular questions of law which the parties to the controversy deem involved in it and necessary to its determination. It is also understood from a remark of counsel for the defendant, that there are other controversies existing between the defendant and other persons growing out of the deposit of wheat with Warren under similar circumstances, and that this is intended or expected to be a test case. For these reasons I will consider whatever questions of law that appear to arise upon the facts. And first, as to the character in which the defendant is liable, if at all. In the title of the case stated, he is described as assignee of Warren, from which it may be implied that the plaintiff seeks to charge him in his character or relation of assignee, and not personally or absolutely. But the defendant is not liable to be sued as assignee until the supposed creditor has proved his debt, and that proof has been rejected by the district judge. Bankrupt Act, § 24. In the latter case the creditor may bring an action against the assignee as such in the circuit court to establish his claim, but in either event the creditor only receives his pro rata of the bankrupt's estate. Besides, the facts stated show that the defendant, if liable to the plaintiff at all, is liable personally, and not as assignee. The gravamen of the complaint is, that the defendant sold and disposed of wheat in the north granary which the plaintiff claimed to be in some sort his property, and thereby wrongfully converted the same to his own use, to the damage of the plaintiff the sum claimed. The estate of the bankrupt is not answerable for the tortious acts of the defendant because he is the assignee thereof, or professed to be acting as assignee in the matter complained of.

The law arising upon the facts stated concerning the deposit of wheat is well settled. The plaintiff's wheat having been mixed and confused with that in Warren's possession, with the mutual consent of the parties, the plaintiff became tenant in common with Warren of the bulk of grain produced by the mixture, and his interest therein was in proportion to the number of bushels deposited by him. Practically the result would be the same in this case if the wheat had been mixed without the plaintiff's consent, because, being presumed to be of equal value, the plaintiff would not be injured if he received the number of bushels of wheat deposited by him, although not the specific grains so deposited. Willard v. Rice, 11 Metc. [Mass.] 495; 2 Bl. Comm. 405; 2 Kent, Comm. 364; Hart v. Ten Eyck, 2 Johns. Ch. 108; Story, Bailm. § 40. But it appears that Warren removed, or allowed to be removed, all the grain in this granary before the filing of the petition in bankruptcy. Particularly what became of it does not appear. Probably it was manufactured into flour and disposed of by Warren long before the filing of the petition. But the inquiry is not material, so long as there is no evidence to show that it is the identical grain sold by the defendant contrary to the protest of the plaintiff. Upon this point the case stated is silent and no inference in favor of the plaintiff can be made from the facts set forth. This being so, the plaintiff, so far as appears, had no interest in the specific grain disposed of by the defendant. His only interest was that of a general creditor of the estate. It must be presumed from the facts stated that the plaintiff's grain was converted by Warren to his own use. If so he thereby became liable to the plaintiff for its value. This liability is a claim against the estate and provable as a debt in bankruptcy.

In conclusion, it is sufficient to say, that the defendant did not personally incur any liability to the plaintiff by the sale of the wheat in question, because the plaintiff does not appear to have had any specific interest or property in it. The claim of the plaintiff is for damages in money for the value of wheat deposited with the bankrupt, and by him converted to his own use and not accounted for. Such a claim is a debt or demand provable against the bankrupt's estate, and for which the assignee, as such, cannot be sued, except the same be rejected by the district judge, on objections by the assignee, as prescribed in section 23 of the Bankrupt Act. Let judgment be entered, that the plaintiff take nothing upon the case stated and that the defendant recover his costs, and expenses to be taxed.

[NOTE. Should the warehouseman sell a portion of the wheat, each original owner is entitled to claim his pro rata share; and should he buy other wheat, and mix it with the re-

maining portion, the title to such additional wheat would pass to the original owners. Rahilly v. Wilson, Case No. 11,531.]